# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 27, 2016

No. 332110
Wayne Circuit Court
Family Division
LC No. 15-520033-NA

*In re* K. R. SHORT, Minor.

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Respondent-father appeals as of right an order terminating his parental rights to his child, KS, pursuant to MCL 712A.19b(3)(g) (failure to provide care and custody), MCL 712A.19b(3)(h) (incarceration of parent), MCL 712A.19b(3)(*i*) (parental rights to one or more siblings terminated), and MCL 712A.19b(3)(j) (reasonable likelihood of harm). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Petitioner initiated child protective proceedings relating to KS, alleging in relevant part that KS was living with her biological mother who failed to provide adequate care and suitable housing. According to the petition, respondent did not provide housing or financial assistance, and he was to be incarcerated until the 2040s.

Respondent-father appeared by telephone at the preliminary hearing, and the court explained that it would send respondent an affidavit of parentage so that he could become KS's legal rather than her putative father. The trial court authorized the petition and arranged for respondent to appear via video for future hearings. At the pretrial hearing, respondent appeared by video, but the affidavit of parentage was not yet complete.

At the next hearing, respondent asserted that he had signed and returned the affidavit of parentage relating to KS. Respondent admitted that he was in prison with the earliest possibility of release in 2047. He testified that he had been convicted of two counts of kidnapping, two counts of armed robbery, criminal sexual conduct, possession of a firearm during the commission of a felony, felonious assault, and possession of a firearm by a felon. But respondent asserted that he had appealed his convictions, and he believed that he would be

-1-

released "next year or the year after that."[1] Respondent admitted that he was unable to financially care for KS or provide her with a home. But he testified that his sister wanted to care for KS. When asked if his sister had contacted the petitioner, respondent asserted that he would talk to his sister, and the court explained that it would provide respondent with a phone number and that his sister should contact the petitioner.

Respondent admitted that his parental rights to another child were terminated in 2010. Caseworker Raven Hoke explained that the treatment plan for respondent would most likely include supervised parenting time, parenting classes, a psychological assessment, and individual counseling. However, when the court informed her that respondent was incarcerated, Hoke stated that parenting time would probably not be requested. The trial court did not order visitation because respondent's parental rights to another child had been previously terminated, but the court stated that respondent would be allowed to send letters and make phone calls. The court entered an order of adjudication.

At the dispositional hearing, Hoke testified that she mailed respondent a written treatment plan and that his affidavit of parentage had been filed. She expected him to sign and return the treatment plan. According to Hoke, she did not know what services respondent could receive in prison, and she was waiting on respondent's prison to provide her with information about available services. The court inquired about the earliest date of release for respondent, and Hoke explained that it was in 2047. The court stated that petitioner did not need to provide services to respondent because he was incarcerated. The court explained that it would allow respondent to contact his child by phone or write letters, but indicated that petitioner "can't go give him counseling or parenting classes," elaborating that "we're in the reunification business with the parent who's not incarcerated [sic] until 2047." The court explained that respondent could participate in any services available in prison, but that the petitioner could not go there to provide him with the services.

Petitioner filed a supplemental petition to terminate respondent's parental rights based on the termination of his rights to another child, his incarceration, and his criminal history.

On the first day of the termination hearing, the court adjourned with respect to the respondent's termination because it could not secure his appearance by video. On the second day, the court admitted a 2010 order terminating respondent's parental rights to a different daughter, respondent's biographical information from OTIS, and a 2013 judgment of sentence indicating that respondent had been convicted of nine criminal counts. The court then took testimony from the case worker.

Hoke testified that KS was three years old, and was placed in a foster home. Hoke explained that she sent respondent a treatment plan and her contact information, but she did not receive anything back from respondent. According to Hoke, KS's mother indicated that

---

[1] Respondent's convictions and sentences were affirmed in *People v Howard James McKnight*, unpublished opinion per curiam of the Court of Appeals, issued April 21, 2015 (Docket No. 319979) lv den 498 Mich 907 (2015).

respondent had never had a relationship with KS before he was incarcerated, and he had not had contact with KS after going to prison. Hoke testified that it was in KS's best interest to terminate parental rights because respondent could potentially be incarcerated until 2080, he provided no financial support, and he was unable to parent. She also indicated that respondent's parental rights to another child were previously terminated, and that his criminal record for kidnapping and first-degree criminal sexual conduct concerned her.

Hoke testified that respondent's treatment plan called for parenting classes, counseling, and supervised parenting time if allowed in prison. She explained that she contacted respondent's prison counselor and exchanged emails, but no one had informed her whether services could be provided to respondent at the prison. Hoke explained that she was unsure if respondent had received individual counseling from his prison counselor, and she agreed that neither parenting classes nor supervised parenting time were arranged for respondent. Hoke testified that respondent posed no risk of harm to KS because he would be incarcerated for the entire time that she would be a minor.

Respondent testified that he had previously been incarcerated, and that he had only been out of prison for "three or four months" after KS was born. According to respondent, he provided diapers and formula for KS "two or three times," was "around her every day," and babysat for her twice. Respondent admitted that his earliest release date was 2047, but he claimed that he was in contact with the Innocence Project and he believed that DNA evidence would result in his convictions being overturned. He testified that he felt he was innocent, that his attorney did not call an alibi witness, and that he planned to file an appeal with a federal court. Respondent testified that he received the treatment plan and sent back a response but that it was returned because there was something wrong with the address. Respondent testified that he had not been able to take parenting classes or get individual counseling, and he did not know of any opportunities to do so while in prison. Respondent testified that his mother and sister wanted to see KS and could provide her with love and support.

Respondent admitted that his parental rights to another daughter were terminated in 2010, explaining that this occurred because he "wasn't there," did not show up to court, and could not attend parenting classes because he was "in and out of jail." Respondent testified that the daughter came under the court's care because her mother "shook her up," but he was not present when that happened. He agreed with the court's statement that the mother had admitted to shaking the child because she was mad at respondent. According to respondent, the child was ultimately adopted by her maternal grandfather. Respondent asserted that this was the first time he had been imprisoned, but he had been in and out of jail since 2008. According to respondent, he could not contact the caseworker if he did not have funds for the prison phone, and he could not send anything to KS because he did not know where she was. He explained that he was arrested in 2008 for assaulting and resisting a police officer and was arrested again in 2012 for unarmed robbery.

The trial court found that respondent would be incarcerated for at least 30 years and potentially longer if not released at the earliest opportunity. The court also found that it was uncontroverted that respondent's parental rights to another child had been terminated in 2010, and that there was nothing respondent could do to provide proper parenting for KS. The court determined that the petitioner had proved that termination was proper under MCL

712A.19b(3)(g) because respondent was unable to provide custody and could not do so within a reasonable time because he would be incarcerated for at least 30 years. The court also found that termination was proper under MCL 712A.19b(3)(h) for the same reason. The court determined that termination was proper under MCL 712A.19b(3)(*i*) because of the evidence adduced that respondent's parental rights to his other child had been terminated involuntarily. The court asserted that under MCL 712A.19b(3)(j) there was a reasonable likelihood based on respondent's conduct that the child would be harmed. The court also found that it was in KS's best interests to terminate respondent's parental rights. The court entered a written order on March 7, 2016. This appeal ensued.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred when it found that petitioner established multiple statutory grounds for termination by clear and convincing evidence.

The trial court's decision that a ground for termination of parental rights has been proven by clear and convincing evidence is reviewed for clear error. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

Under MCL 712A.19b(3)(*i*), termination of parental rights is proper if "[p]arental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful." MCL 712A.19b(3)(*i*). "The clear language of the statute requires the court to determine the success of prior rehabilitation efforts as of the date of the termination hearing." *In re Gach*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 328714); slip op at 5.

It is undisputed that respondent's parental rights to another child, DM, were previously terminated in 2010. Respondent first contends that there is no evidence, aside from his own testimony, that prior efforts to rehabilitate him failed before the 2010 termination. At the termination hearing in the present case, respondent testified about treatment and remedial services during the 2010 case, stating that he went "to a couple parenting classes." According to respondent, his parental rights to DM were terminated because he "wasn't there," did not attend court hearings, and did not attend parenting classes because he was "in and out of jail." Respondent's testimony establishes that previous efforts at rehabilitation failed. In any event, the court in the 2010 case terminated respondent's parental rights to DM in part based upon MCL 712A.19b(3)(c)(*ii*), which provides:

> Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The trial court was required to find that respondent failed to rectify adverse conditions despite notice and a reasonable opportunity to do so. Thus, the failure of the previous effort to rehabilitate respondent was one of the very reasons that the court terminated his parental rights to DM.

Respondent also argues that there is no evidence that his parental rights to DM were terminated because of serious or chronic neglect, or physical or sexual abuse by him. Respondent asserts that DM's mother physically abused her, and he testified that he was not present at the time of the abuse. However, the record shows that respondent neglected the child. The trial court terminated his parental rights to DM in part based upon MCL 712A.19b(3)(a)(*ii*), which states: "The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period." Thus, the trial court previously determined that respondent abandoned DM for 91 or more days. Accordingly, the trial court in this case did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(*i*).

Given our conclusion that one ground for termination was established by clear and convincing evidence, we need not address the trial court's other grounds for termination. *In re Utrera*, 281 Mich App 1, 24; 761 NW2d 253 (2008).

### III. SUFFICIENCY OF SERVICES

Respondent next argues that petitioner did not make reasonable efforts to provide him with reunification services. Respondent also asserts that the trial court improperly determined that petitioner was not required to provide respondent with services because respondent would be incarcerated until 2047. We disagree.

"The time for asserting the need for accommodation in services is when the court adopts a service plan, not at the time of a dispositional hearing to terminate parental rights." *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). Here, respondent never asserted that petitioner failed to make reasonable efforts to provide services and thus, did not preserve this argument. Review of unpreserved issues is limited to plain error affecting substantial rights. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances. . . ." *Id.* (internal quotation marks omitted, emphasis in original). The issue of whether reasonable services were offered to a respondent ultimately relates to the issue of sufficiency of the evidence for termination of parental rights. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

However, reasonable efforts to reunify a parent and child are not required if "[t]he parent has had rights to the child's siblings involuntarily terminated." MCL 712A.19a(2)(c).

Respondent's parental rights to another child were previously terminated in 2010; thus, reasonable efforts were not required under MCL 712A.19a(2)(c). Reasonable efforts are also not required if "[t]he parent is required by court order to register under the sex offenders registration act." MCL 712A.19a(2)(d). Respondent was convicted of first-degree criminal sexual conduct and is a registered sex offender. Thus, reasonable efforts were not required under MCL 712A.19a(2)(d). Moreover, petitioner did make a service plan in this case, sent the plan to respondent in prison, and contacted the prison to inquire about what services were available to respondent. Respondent has not shown plain error relating to the lack of services provided where the petitioner was not required to provide any services.

Respondent also asserts that the trial court erred by stating that petitioner could not provide services to respondent because respondent was incarcerated. Indeed, "[t]he state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). However, while the trial court did inform the petitioner that it could not provide services based upon the respondent's incarceration, the court elaborated, explaining that it merely meant that respondent could only utilize whatever services were available in prison. Therefore, there is no indication that the trial court improperly barred petitioner from attempting to engage respondent and respondent has not shown plain error.

## IV. BEST INTERESTS

Finally, respondent asserts that the trial court clearly erred in its determination that it was in the KS's best interests to terminate his parental rights.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012) citing MCL 712A.19b(5). When considering whether termination of parental rights is in the child's best interests, the court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court's decision regarding the child's best interests is reviewed for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

Respondent asserts that the trial court clearly erred by failing to consider that KS was placed with a relative. Failure to consider a child's placement with a relative renders the factual record inadequate and requires reversal. *Olive/Metts Minors*, 297 Mich App at 43. However, there is no record evidence that KS was placed with a relative. Our review of the record, including foster care reports, indicates that KS was placed in an unrelated licensed foster home.

-6-

Thus, the factual basis of respondent's argument is absent, and we cannot conclude that the trial court clearly erred on this basis.

Respondent also argues that the trial court clearly erred because finality and permanence cannot be achieved by terminating only his parental rights where KS could still be returned to her mother. But the court has the power to terminate the parental rights of only one parent. *In re Marin*, 198 Mich App 560, 565-566; 499 NW2d 400 (1993). Respondent fails to cite any authority requiring the trial court to terminate the parental rights of both parents. Further, termination of respondent's parental rights will bring finality and permanence with respect to respondent's own claim of parental rights. Thus, we are not persuaded that the trial court clearly erred on this point.

Finally, respondent asserts that the trial court clearly erred in its best interest determination because respondent requested that his sister or mother care for KS, and petitioner allegedly made no effort to investigate these potential relative caregivers. This argument is unrelated to the child's best interests; instead, it concerns respondent's ability to provide care and custody despite incarceration. To that end, it relates to the trial court's termination of parental rights under MCL 712A.19b(3)(g) and (h). But we decline to address termination under these grounds having already determined that termination was proper under MCL 712A.19b(3)(*i*). *In re Utrera*, 281 Mich App at 24.

In sum, the trial court did not clearly err in finding that termination was in KS's best interests where respondent could not provide the care and custody that KS needed, where KS needed stability and long-term planning, where respondent had a history of criminality, where respondent would not be released from prison for a substantial amount of time, and where respondent did not benefit from services offered in a prior termination proceeding. *In re Trejo*, 462 Mich at 356-357.

Affirmed.


/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan

-7-